Charles Nicola Perrin for the petitioner Aurelio Pena-Torres. This is a petition for review of a denial of a motion to reopen by the BIA. And the government has asserted that it should be dismissed for a number of grounds, not the least of which is they allege that the argument does not address the matter before the court,  And if they were correct in that, if the Board of Immigration Appeals had limited its decision solely to the motion to reopen, I think the government would have an argument. However, that is not what the Board of Immigration Appeals in this case did. The Board of Immigration Appeals reviewed the entire appeal and basically reopened and reissued a new decision on its prior order, reinstating it. Procedurally, what happened in this case is the applicant applied for asylum before the immigration judge, asserting that he had a well-founded fear of persecution based upon membership in a particular social group as an openly gay Mexican male, and that he had been subject to past persecution. The immigration judge heard the case, took it under submission, and issued a very detailed, thorough written decision. The prior counsel for the petitioner took that on appeal to the Board of Immigration Appeals, basically on two grounds. First, she alleged that the immigration judge had shown bias towards Mr. Pena based on his status as a homosexual and not given him a fair trial, had prejudged him. And secondly, she argued that the judge erred in not finding that he was, in fact, a member of a protected social group, and the judge erred on the merits of his asylum application. The Board issued a summary dismissal. They issued a decision without a new opinion. The prior counsel did not appeal or did not file a petition for review to the circuit court within 30 days, and therefore, not having done that, they waived that petition for review on that decision. What they did instead was they filed a motion to reconsider, which was basically a four-sentence motion, and it said that if you read my brief, you'll see that the judge was prejudicial towards my client. Read my brief and reverse. Subsequent to that, the Board of Immigration Appeals issued a decision, and they didn't approve of it. The reason for denying it is the respondent states that the arguments in the appeal brief should be reviewed, and it would show the immigration judge was biased and prejudged his case. They said, well, we consider the arguments raised in the respondent's appeal brief, but found that they were not persuasive in showing the immigration judge's conclusion in finding that the respondent had not met his burden of proof was an error. So on reconsideration, we find no error with the immigration judge's decision. So what they did in the denial of the motion to reopen, they looked at both arguments. They looked at the ‑‑ actually, they looked more at the second argument. They don't really address much as far as the ‑‑ My understanding is that you asked them to please look at everything again and reconsider it. That's basically what you asked them to do. And they said essentially, although they ‑‑ the bottom line is the motion to reconsider is denied, they actually granted what you asked for, because they said upon reconsideration, i.e., we did reconsider as you asked, but we again find no error. So in essence, they did it all over. And they said that they did it all over again and reconsidered. And what we have here is essentially a second merits decision. Is that ‑‑ Yes. That is my position. Now, the government has moved to dismiss, saying that because of Stone v. INS ‑‑ Could we just move to merits for just a little bit? Your time is running out. Okay. Halfway. Almost halfway through your time. How do you define the social group that's at issue here? He's somebody who had been ‑‑ I think we could say had been targeted by police. The immigration judge in his decision said that the ‑‑ Just define the social group for me. Openly gay male, a member of an activist gay organization, Mexico City, has been identified by the police, has been beaten by the police. You're wandering all over the place. How about openly gay male? Openly gay male. Openly gay male. Is that the social group, or are you going to say openly gay male who subsequently gets HIV? Well, HIV ‑‑ Okay. That was ‑‑ He did not have HIV at the time, at the time that he was in Mexico. That is something that happened subsequent. But he was harmed by the police. And the case that I said on this is Hernandez Montiel, where in that case it was a transvestite, so maybe he would be, you know, the government would argue more easily identified. But here, this person is openly gay, and certainly he was identified as being openly gay by the police. And they walked up to him and asked him if he was gay. They did extort money from him. However, extortion of money is not always a finding of persecution. But it can be if it's combined with, like in Desir v. Ilkert, where they said that, you know, if you're extorting them and also there's a mixed motive. And here I think it's pretty clear that he was signaled out because he was gay. I want to point ‑‑ because the government in its argument here basically is not dealing with the merits of the case. It really felt on appeal that it didn't have to. It felt that my brief did not cite the record. It says in several places that, you know, I didn't cite that the organization, the Gay Gorillas, that he belonged to or were in his testimony. He discussed being beaten by the police. And he complained that I cited the immigration judge's decision. I don't have a problem with the immigration judge's summation of the facts. I thought he did a very good, concise job of reviewing the facts. What I had a problem with was his legal conclusions as far as saying that he could not be included as a member in a particular social group that would be subject to persecution. Well, what is the Ninth Circuit law at this point on open homosexuals as a social group? Well, I think Hernández Montiel is one that has recognized it. Those weren't the facts of Hernández Montiel. But in the course of Hernández Montiel, they seem to have asserted this. Hernández Montiel had a sort of transvestite piece to it, too. Right. But that goes to the extent that he was easily identified as gay. And the police in that case, they did significant harm to Hernández Montiel. But in this case, this person had been three times, you know, approached by the police. And on the last one, they took him in a patrol car and drove him around and eventually beat him up quite severely. These were local police? These were local police. Well, they're in Mexico City. It's the police in Mexico City. Is that a national police force or a local police force? I don't know. I believe it would be local police in Mexico City, but I don't know. I don't believe that. I mean, do you know? He said the police. I know the police. The question is, some countries have national police. Right. Some have local police. Right. Do you know what Mexico has? I know they do have national police in Mexico. And certainly in the district, in the federal district. Do they also have local police? They would have local police also, some. But here, this is in the federal district, so I think it would probably be a federal territory, I mean, special, which would be under the federal government of Mexico. It's not a ñ it's different than any other state. What would you do, ultimately, if we were to agree with you? I think I would want you to find that the judge erred in finding that he was not a member of a particular social group that had been persecuted. I'd want you to either grant him restriction. Excuse me, and that he had been subject to past persecution himself? Yes, he has been subject to past persecution himself. And that he had a ñ and then can we, on this record, determine whether he had a well-founded fear of future persecution, or do we have to remand on that? Yes, or you could possibly ñ there could be a grant of asylum based upon ñ solely upon past persecution, if it was found severe enough. I don't think that you can just simply grant asylum, because I think that that's a discretionary issue which the board has jurisdiction to decide. Can we find eligibility for asylum, or would we have to remand because the I.G. ñ did the I.G. ever reach the question of whether if he had ñ was persecuted, he had a well-founded fear of future persecution? He found that he was subject to police brutality. He did not find it rose to the level of persecution. He didn't ñ he didn't ñ he didn't find that. So did the other officer find him? No, he did not. So he would have to find that ñ he would have to be remanded to find that he had, in fact, suffered persecution based upon a protected ground, which is what the immigration judge found he did not do, and that's why he denied it. Okay. Thank you. May it please the Court, James Grimes for Attorney General Ashcroft. Your Honors, we believe this petition is controlled by the Supreme Court's decision in Stone and this Court's decision in Martinez-Serrano, which is cited in the government's brief in Page 16. Well, look, this is what ñ I don't understand that. In this instance, what the board said on the motion to reconsider was upon reconsideration, we find ñ we hold such and such. Doesn't that sound like they ñ they did reconsider and they did look at everything again and they reiterated their ñ the same conclusion as again, but they didn't simply say we're not going to reconsider. They did reconsider. I can see where you're ñ Your Honor's point, but the last ñ I'm sorry. I'm sorry? And we have some case law, don't we, saying that when that happens, then the merits are before us? The last sentence, if I may, Your Honor, of the board's decision is the motion to reconsider is denied. So maybe the board is a little imprecise with its language, but ultimately, its decision is it denied the motion to reconsider. Well, they didn't change their mind, but they did reconsider. Of course they didn't change their mind because he ñ he filed ñ Well, what does it mean to say upon reconsideration, we again find no error by the immigration judge in denying the Respondent's applicant for relief? The Respondent's arguments fail to persuade us that the immigration judge's decision should be overturned. What is that if it isn't a determination that we are going to reconsider, we have reconsidered, and you lose on the merits? It's ñ it's a statement that's based upon this four-sentence motion that says I've already raised these arguments. Look at these arguments I've already raised. You haven't convinced us of anything. I'm not sure what Pena could have expected the board to do when all he's done is raise the arguments that the board has already found wanting. And ordinarily, I mean, because I've read a fair number of these by now. Sure you have, Your Honor. They say ñ they don't say this. They don't say upon reconsideration, we again find no error. They simply say ñ That's true. Right. So this certainly reads like a circumstance in which they did reconsider and they reiterated or they again made a merits decision. That's exactly what they said they did in Hague Verba. I'm sorry, Your Honor. That's exactly ñ that's expressly what they said they did. I understand what Your Honor is saying. I think that ñ All right. So let's assume I'm right. The board hasn't briefed the merits. That puts us in a really bad position. What are we supposed to do now? The board has ñ You have not ñ I mean, you, INS, I'm sorry. The government has not briefed the merits. What are we supposed to do next? Well, I can answer that in two ways. I mean, this Court has told the government that in cases in which waiver is an issue, if we address the merits, then we waive our waiver argument. Oh, come on. I mean, you know that you could have said that there's a jurisdictional problem. There's also a ñ and if we get to the merits, you do it all the time. Well, in Your Honor's opinion, in NADOM, it's N-D-O-M, Your Honor said that that's what would happen. And if we address the merits, then we waive our merits argument. I really don't think I said that. And if I did say it, I'll change it. I'll say something. I'm sure I did not say that. It's at 384-743 at page 751. And I said that if you make a jurisdictional argument and then you reach the merits, you waive the jurisdictional argument? We've, of course, made the jurisdictional argument here. Yes, that's right. And then you could have gone out and addressed the merits. Yes, what Your Honor said is that in cases in which the government briefs the issue and thus suffers no prejudice, this Court then has discretion to reach the issue that was waived. But in any event, I can certainly address the merits. And I think that the first problem with that is what we've also talked about, the fact that Mr. Pena hasn't cited the record in support of his argument regarding the merits. And then the problem that really comes down to is at page 89 of the record, the immigration judge said that relocation is possible. So even if past persecution is shown, relocation is possible, Mr. Pena did not raise that issue with the Board. In other words, the Board did consider the question, all of the questions involved in determining eligibility. They determined whether it had been persecuted. They determined whether it was on account of being in a group. They determined whether the government had rebutted any finding of well-founded fear by finding that there were other places where he could be relocated. I think what the agency did, I don't believe the agency addressed the issue of whether or not he was a social group. I think it's assuming arguendo that he's in a social group, which, by the way, the social group was framed at page 29 of the brief before the Board as a social group of homosexual men who are HIV positive. That is the social group that he raised. That's the social group over which this Court would have jurisdiction to consider. But in any event, he did not challenge the issue of relocation before the Board, and because he didn't challenge it, this Court has no jurisdiction to review that issue because he didn't exhaust it. And that issue is dispositive of his withholding and his asylum claim. And because he didn't address that issue, he's essentially foreclosed his ability to obtain relief from this Court. But even if that weren't the case, as the immigration judge said at page 82, based upon testimony that's at pages 145 to 148, Peña traveled and repeatedly returned to Mexico, thereby demonstrating through his actions that he does not have a subjective fear of persecution. As the immigration judge noted at pages 222 and 223, Peña lived in the same house in Mexico for three years after the last event about which he complained, thereby, again, demonstrating that he does not actually have a subjective fear. And, of course, as the immigration judge pointed out at pages 87 and 88, Peña testified at page 110 that he did not contract HIV until June of 1997 or didn't find out he had HIV. He was HIV positive until June of 1997, which was after he came to the United States. So by definition, he was not a member of the social group that he has framed upon which he's ---- He's framed to at least two different social groups, has he not? I don't believe so, Your Honor. I believe specifically at page 29 of the record he says the social group is homosexual men who are HIV positive. He's mentioned other possible social groups here this morning, but the social group that he alleged ---- And we determined that he had just been persecuted because he was a Jew, that they persecute not only Ashkenazi Jews, but all Jews. He would lose his case? Based on ---- I'm not sure. He said, I'm persecuted because I'm an Ashkenazi Jew when he was really persecuted just because he was a Jew. I don't believe so. Well, what's the difference? He says, I'm persecuted here because I'm a gay with AIDS. And the answer is, well, no, not because you're a gay with AIDS, because you're a gay. Well, he certainly could have framed his issue as just whether he was a homosexual. But you say we have no jurisdiction because he said, I'm persecuted because I'm a gay with AIDS. You said that's the only issue we can consider. Well, that's the issue that he has framed. But you just told me if he framed it as an Ashkenazi Jew, we could say that you're persecuted because you're a Jew. What's the difference if you're persecuted? He says, I framed it as a gay with AIDS. And the answer is, no, it's just because you're a gay. I'm not sure I could answer Your Honor's question. I think that if we get to the merits, what this case comes down to is you don't have jurisdiction to consider the relocation issue because he didn't raise it, and that issue is dispositive. Through his actions ---- I'm sorry. What's the real issue? The relocation issue that demonstrates ---- Relocation. Yes. I'm sorry. The immigration judge said at page 89, relocation is a possibility. You're saying that he did not raise that in his brief to the BIA. If you look at pages 22 through 35 of the record, that is the case. It doesn't come up. It's not in there. He also demonstrated through his actions, continuously returning to Mexico, remaining in Mexico for three years after the last event, he demonstrated he does not ---- Question. That's not an exhaustion question. That's a merits question. No, that is a merits question. But the relocation issue is an exhaustion issue, and it is dispositive. Let me ask you, what are you supposed to do? He did travel quite a bit. I think he was in the music business or something. What does it prove? What are you supposed to do if you're being persecuted in country A, you've managed to go on trips to B, C, and D where you may or may not be welcome? Is your obligation to seek asylum in those countries? Well, I don't know what your obligation would be, but if you actually have a fear that you're going to be persecuted, harmed, or abused, then it's reasonable, as the immigration judge noted, to assume that you're not going to return. This wasn't even the first time he came to the United States. Or one would assume that you wouldn't remain in Mexico for three years in the same house if you actually do have a subjective fear. That's what I'm saying, Your Honor. I understand the argument. I'm just trying to explore it, trying to understand what is really reasonable for somebody who is persecuted because he's gay in country A, which is not unique that he's persecuted in that country. I don't know. He may seek asylum elsewhere. He may try and travel to another country. I think the real question, if you were to reach the merits, is, are you compelled to find that because he left and came back several times that he did have a fear? Are you compelled to find that that's not? That he has a real subjective fear because he came back? Instead of what? Instead of trying to stay in Japan or wherever? That was one of the places. It's certainly a legitimate factor. I'm in trouble to go back to something else. Why don't you answer the question? I was going to say it's certainly a legitimate factor for the agency to consider. Actions, of course, speak louder than words. Those are his actions. I'm sorry, Your Honor. You said that he didn't present his claim as being homosexual, but only homosexuals with A's. But looking at the BIA brief, it says, homosexuals considered as a group meet all the criteria set out and so on, go on and on about why homosexuals are a group. Then HIV-positive people who are gay also meet the criteria in the above definition. So wasn't he arguing in the alternative? Aurelio? I'm on page 29. Yes. Page 10 of the brief to the BIA. I'm looking at the, I guess I should say 28 and 29. Aurelio Pena has a well-founded fear of persecution based on his membership in a particular social group of gay men with HIV infection. All right, but then keep reading. I think there's a larger point here. I don't think the agency addressed whether or not he's in a social group. There may be, but you've been standing up here making arguments about what was said, which turned out to be totally incorrect. I believe that's exactly what I just read to you, Your Honor. Next sentence says, Respondent's claim for belief is based upon the fact that he belongs to the easily identified social group of homosexuals and to the easily identifiable social group of those affected with HIV infection. Members of both of these particular social groups are targeted for persecution as a class. You're correct, Your Honor. I stand corrected. You're right, and I'm sorry that that is true. But I don't believe that the agency addressed whether or not he was in a social group. The issue was, assuming arguendo, he doesn't have a well-founded fear. In any event, we believe that this Court has no jurisdiction over the merits and that the issue has been waived, and if you reach the merits, that he's not entitled to relief. Thank you. Thank you, counsel. I just wanted to address the issue on whether it should be denied because of not raising the issue of the availability of relocation. He was, yeah, I did address that in my brief, where I said that there was no basis for the IJ's speculation that he would find less or more likely to accept homosexuality outside of Mexico City or in a rural area in Mexico or in a smaller village. But also, since he was persecuted by the government, by the police, countrywide persecution is presumed, and the burden falls upon the government to show that he could safely relocate elsewhere. Well, the government's point is that he didn't raise this issue before the BIA in the brief. They said that he was not eligible, I mean, that he would be persecuted upon return to Mexico. Well, the brief does say that if he were to return to Mexico, he would not be able to get any medication for his AIDS anywhere in Mexico, and it would be a threat to his life if he were returned to Mexico because of that. So he doesn't specify where in Mexico, but in saying that he returned to Mexico, he would imply that it was anywhere, and given that it was by the agents of the government, countrywide persecution would be presumed. Well, I don't know if it's persecution, but he said should he be forced to return to Mexico, he will lose the treatment and will die. This is aside from the fact police or people police control again could be rape, torture, and killing. I don't think that's limited to any particular part of Mexico, the claim of drugs are unavailable. All right. Anything else? That's it. No, I mean, the government did address many issues regarding the format of my briefing, but I guess that might have been if you have any questions on that, I don't need to address it. Thank you. Thank you. The case disargued is submitted. The next case on the calendar is Cornejo Merida v. Ashton.
judges: Reinhardt, Paez, Berzon